1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10   PAUL ANTHONY RUPE,

11             Plaintiff,                    No. CIV S-04-2630 LKK DAD P

12        vs.

13   J.S. WOODWARD, et al.,                  ORDER AND

14             Defendants.                   FINDINGS & RECOMMENDATIONS

15   _____/

16             Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17   42 U.S.C. § 1983.  Plaintiff has paid the appropriate filing fee.[1]  This proceeding was referred to

18   this court by Local Rule 72-302 pursuant to 28 U.S.C. § 636(b)(1).

19             The court is required to screen complaints brought by prisoners seeking relief

20   against a governmental entity or officer or employee of a governmental entity.  28 U.S.C.

21   § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised

22   claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be

23   /////

24   _____

25       [1]  Plaintiff indicates in his notice of change of address that his mother overpaid the
     amount due for the $150 filing fee.  Plaintiff should have his mother send a letter to the Clerk of
     the Court with a reference to the case file number, and produce any records she may have
26   verifying the overpayment.

                                             1

1  granted, or that seek monetary relief from a defendant who is immune from such relief.  28

2  U.S.C. § 1915A(b)(1),(2).

3        A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

4  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28

5  (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an

6  indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

7  490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

8  pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

9  Cir. 1989); Franklin, 745 F.2d at 1227.

10       A complaint, or portion thereof, should only be dismissed for failure to state a

11  claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set

12  of facts in support of the claim or claims that would entitle him to relief.  Hishon v. King &

13  Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Palmer

14  v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In reviewing a

15  complaint under this standard, the court must accept as true the allegations of the complaint in

16  question, Hospital Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976), construe the

17  pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor,

18  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

19       Here, plaintiff claims both that his due process rights were violated when his

20  classification status was changed prior to the issuance of a rule violation report and that the

21  disciplinary action was unsupported by any evidence.  Plaintiff also claims that because he

22  received a rule violation report after he submitted an inmate grievance regarding the change in

23  his classification and visiting privileges, the rule violation was issued as retaliation.  Plaintiff

24  seeks unspecified compensatory damages, punitive damages of $100,000 from each of the twenty

25  defendants, reinstatement of his A1A classification status, expungement from his central file of

26  /////

1  all disciplinary reports and other information concerning his lawsuits, and an order prohibiting

2  further retaliation against him.

3              Plaintiff provides the following allegations and exhibits in support of his claims.

4  On May 2, 2004, plaintiff was passing out food trays to the orientation cells when defendant

5  correctional officer Edmonson claimed that he saw plaintiff receive a piece of paper from an

6  inmate in cell number 208.  (Compl, Pl.'s Decl. at 2; Ex. J.)  In his written report, defendant

7  Edmonson states that he questioned plaintiff, that when he had plaintiff remove his sweat shorts,

8  a white piece of paper containing a green leafy substance fell to the floor, and that plaintiff

9  attempted to hide it by stepping on it and then kicking it under the sally port door track.  (Ex. J at

10  2-3.)  Plaintiff was placed in administrative segregation and on May 5, 2004, after appearing

11  before the Institutional Classification Committee (ICC), plaintiff was placed on orientation

12  status.  (Pl.'s Decl. at 2-3.)  On May 7, 2004, the Unit Classification Committee (UCC) removed

13  plaintiff from A1A status to A2B status which impacted plaintiff's canteen privileges, access to

14  the exercise yard, and showers.  (Id. at 3.)  Later, plaintiff received a form 128G which also

15  changed plaintiff's work status and restricted his visitation to non-contact visits.  (Id.; Ex. D at

16  2.)  On June 1, 2004, plaintiff wrote a letter to the warden and submitted an inmate appeal form

17  contending that adverse actions were taken before plaintiff was issued a rule violation report,

18  contrary to California Penal Code section 2932(c)(1)(B).  (Compl., Ex. B & C.)  Plaintiff argued

19  that since 30 days had passed since the alleged misconduct, the prison was "procedurally barred

20  from pursuing this matter" and if a rule violation report was subsequently issued, it would be

21  deemed a retaliatory act.  (Id., Ex. B at 1.)  Defendant L. Martinez responded to plaintiff's letter

22  stating that if the laboratory analysis was positive for a controlled substance, a rule violation

23  report would be issued and that until the rule violation issue was resolved, plaintiff would remain

24  on non-contact visiting status.  (Id., Ex. D at 2.)  On June 10, 2004, plaintiff received a rule

25  violation report with supporting documentation confirming that the substance in question was

26  marijuana.  (Id., Pl.'s Decl. at 4.)  Plaintiff questions the validity of the laboratory testing because

1   he was unable to obtain documentation from the Department of Justice, Bureau of Forensic

2   Service, which conducted the testing.  The Bureau provided the following response to plaintiff's

3   Public Records Act request:

> You have requested information regarding when a report in BFS
> Case No. SC-04-000779-0001 was faxed and/or mailed to Mule
> Creek State Prison and the date the report was completed.  A
> thorough search of the Laboratory's records was conducted and no
> record was found regarding your request.
>
>   Additionally, in as much as your request pertains to investigative
> records held by this office, such investigative records are exempt
> from disclosure to the public . . . .

9   (Compl., Ex. O at 1.)   In light of this response, plaintiff asserts that the laboratory report is

10  invalid, that no marijuana was found, that no actual testing was conducted and that there is no

11  evidence to support the adverse action taken against him.  (Compl., Pl.'s Decl. at 7.)  Plaintiff

12  also points to discrepancies with the date of the laboratory report (Compl., Ex. H), the date the

13  report was received at Mule Creek State Prison (Id., Ex. G), and the date the referral was made to

14  the Amador County District Attorney for prosecution (Id., Ex. F).  Plaintiff argues that one of

15  these documents was falsified because a referral to the district attorney could not have been made

16  before Mule Creek staff received the laboratory report.  (Id., Pl.'s Decl at 5.)  Plaintiff filed an

17  inmate grievance regarding the rule violation raising all of these discrepancies.  (Id., Pl.'s Decl. at

18  8 & Ex. Q.)  His appeals were denied.  Plaintiff claims that defendants who reviewed his appeal

19  continued the retaliation against him "by providing a nonsensical, irrelevant and evading

20  response."  (Id., Pl.'s Decl. at 8-10.)

21        Plaintiff names as defendants, the correctional officers and administrators who

22  reviewed his inmate appeals at the three levels of review.  Additional defendants are named

23  because of their involvement in placing plaintiff in administrative segregation, and their

24  participation in connection with the UCC, ICC, or plaintiff's disciplinary hearing.  (Id., Pl.'s

25  Decl. at 10-11.)  J.S. Woodward, the Director of the Department of Correction, is named as a

26  defendant because of a departmental policy that requires prison officials to place prisoners'

4

1    appeals, complaint letters to public officials, habeas petitions and civil rights complaints in the

2    prisoners' C-files.  Plaintiff contends that such a policy encourages retaliation by prison officials

3    because they have access to review prisoners' C-files.  (Id., Pl.'s Decl. at 10.)

4            Plaintiff contends that prior to the issuance of a rule violation report, his

5    classification status was changed which resulted in more restrictive visitation, canteen, yard and

6    shower privileges and a change in his work classification.  The court finds that plaintiff's

7    allegations fail to state a cognizable due process claim.

8            The Due Process Clause of the Fourteenth Amendment prohibits state action that

9    deprives a United States citizen of life, liberty, or property without due process of law.  U.S.

10   Const. amend. XIV.  A person alleging a violation of his right to due process must establish that

11   he was deprived of an interest cognizable under the Due Process Clause and that the procedures

12   attendant upon that deprivation were not constitutionally sufficient.  Kentucky Dep't of

13   Corrections v. Thompson, 490 U.S. 454, 459-60 (1989); Board of Regents v. Roth, 408 U.S. 564,

14   571 (1972).  Here, plaintiff complains of restrictions which resulted from his classification

15   change; however, a prisoner has no constitutional right to a particular classification status.

16   Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir.1987) (citing Moody v. Daggett, 429 U.S.

17   78 (1976)).

18           A liberty interest can be created by state law.  See Sandin v. Conner, 515 U.S.

19   472, 483-84 (1995) (holding that a liberty interest is created if the deprivation "imposes an

20   atypical and significant hardship on the inmate in relation to the ordinary incidents of prison

21   life").  However, even if plaintiff were able to demonstrate that he has a state created liberty

22   interest, plaintiff received all the process he was due.  When placing a prisoner in administrative

23   segregation, "[p]rison officials must hold an informal nonadversary hearing within a reasonable

24   time after the prisoner is segregated.  The prison officials must inform the prisoner of the charges

25   against the prisoner or their reasons for considering segregation.  Prison officials must allow the

26   prisoner to present his views."  Toussaint v. McCarthy, 801 F.2d 1080, 1100 (9th Cir. 1986).

1   The exhibits submitted with plaintiff's complaint confirm that the same day that plaintiff was

2   placed in administrative segregation, he was given a notice explaining the reason for his

3   administrative segregation placement, that within three days he appeared before the ICC for

4   review of his AdSeg placement and that plaintiff was provided an opportunity to present his

5   evidence or views at that time.   Three days after his adseg placement, plaintiff appeared before

6   the ICC.   A hearing within 72 hours of segregation is "within a reasonable time."   801 F.2d at

7   1100, n.20.

8            As to plaintiff's contention that he did not receive a rule violation report prior to

9   the change in his classification and the placement of restrictions on his visitation, canteen,

10  exercise, and shower privileges, due process does not require that a rule violation report be issued

11  prior to such action.   As the court noted above, plaintiff received an administrative segregation

12  unit placement notice (CDC 114-D) explaining the reasons for the placement.   He appeared

13  before the ICC for a review of his adseg placement.   At the ICC hearing and subsequent UCC

14  hearing, plaintiff was provided the opportunity to express his views and to present his evidence;

15  however, plaintiff chose to make no comment.   To the extent that plaintiff relies on prison

16  regulations in support of his assertion that the rule violation report must be issued within a

17  certain time period or prior to the imposition of adverse action, the court finds no case authority

18  to support this claim.   In fact, "inmates lack a separate constitutional entitlement to a specific

19  prison grievance procedure."   Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann

20  v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)).   Thus, the court finds no due process violation

21  based on plaintiff's claim that a rule violation report was not issued prior to the change in his

22  classification and other resulting adverse actions.

23           Next, plaintiff points to discrepancies in the facility's documents and laboratory

24  report to argue that there is no evidence to support the hearing officer's guilty finding on the rule

25  violation report for possession of marijuana.   Although plaintiff has not established a cognizable

26  liberty interest, the court also finds that this due process claim fails under the "some evidence"

1  standard.  <u>Superintendent vs. Hill</u>, 472 U.S. 445, 455 (1985).  Due process requires that there be

2  some evidence to support the decision of the prison disciplinary board.  "This standard is met if

3  there was some evidence from which the conclusion of the administrative tribunal could be

4  deduced . . . .  Ascertaining whether this standard is satisfied does not require examination of the

5  entire record, independent assessment of the credibility of witnesses, or weighing of the

6  evidence.  Instead, the relevant question is whether there is any evidence in the record that could

7  support the conclusion reached by the disciplinary board."  <u>Id.</u> (internal quotation marks and

8  citations omitted).  Here, there was an eye-witness who saw plaintiff in possession of two rolled

9  cigarettes containing a green, leafy substance and there is a laboratory report indicating that the

10  cigarettes were analyzed and determined to contain marijuana.  Plaintiff argues that the

11  laboratory report is invalid because his Public Records Act (PRA) request to the Department of

12  Justice, Bureau of Forensic Services produced no disclosures.  Plaintiff misinterprets the

13  response to his PRA request.  Plaintiff asked for information regarding when the report was

14  faxed or mailed to Mule Creek State Prison and when the report was completed.  The PRA

15  response was that no record was found.  In other words, there are no documents which record

16  either the date when the report was mailed or faxed to Mule Creek State Prison or the date the

17  report was completed by the Bureau of Forensic Services.  The court also finds unpersuasive

18  plaintiff's argument that there are discrepancies with dates and that the laboratory report should

19  therefore be disregarded.  The court finds that there was some evidence to support the finding

20  that plaintiff was guilty of possessing marijuana.

21          Lastly, the court finds that plaintiff has failed to state a cognizable retaliation

22  claim.  Plaintiff contends that he sent a letter to Warden Kernan asking that his classification

23  status be corrected and stating that if any rule violation report was issued subsequently, he would

24  "consider it an act of retaliation."  (Compl., Rupe Decl. at 4.)  Plaintiff also contends that based

25  on CDC policy, all inmate grievances, habeas petitions and civil actions are stored in the

26  /////

7

1   prisoner's central file (C-file), and that this results in retaliation because CDC employees have

2   access to the C-files.  (Id., Rupe Decl. at 1.)

3           To support a claim of retaliation under § 1983, a prisoner must allege that (1)

4   prison officials retaliated against him for exercising his constitutional rights, and (2) the

5   retaliatory action does not advance legitimate goals of the correctional institution or is not

6   narrowly tailored to achieve those goals.  See Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.

7   1985).  A prisoner must also establish that the protected conduct was a substantial or motivating

8   factor for the alleged retaliatory acts.  See Mt. Healthy City Board of Ed. v. Doyle, 429 U.S. 274,

9   285-87 (1977).  The court finds that plaintiff has failed to demonstrate that retaliation for his

10  litigation and grievance activities was the substantial or motivating factor when plaintiff's

11  classification status was changed and privileges were restricted.  As the court noted above, there

12  was more than "some evidence" to support the rule violation.  In addition, there is a legitimate

13  penological interest to restrict a prisoner's contacts, both  inside and outside the institution, while

14  an investigation for possession of contraband is pending.  Therefore, the court is not persuasive

15  by plaintiff's argument that retaliation should be implied because the action taken against him

16  was issued after he sent a letter to the warden.  In fact, the rule violation report was issued on

17  June 3, 2004, after the Department of Justice confirmed that the seized substance was marijuana.

18          On December 13, 2004, plaintiff filed an ex parte motion requesting that the court

19  prohibit the California Attorney General's Office from representing the defendants in this action.

20  The request will be rejected.  The state has a mandatory duty to represent the state and any state

21  officer acting in an official capacity.  See Cal. Gov. Code § 12512 ("The Attorney General shall .

22  . . defend all causes to which the State, or any State officer is a party in his or her official

23  capacity.").  In representing the state, the Attorney General will also normally represent the

24  public interest.  See, e.g., D'Amico v. Board of Medical Examiners, 11 Cal. 3d 1, 14-15 (1974).

25  In an exceptional case, the Attorney General may recognize a conflict of interest between the

26  duty to represent the public interest and the duty to represent a state agency.  "However, unless

the Attorney General asserts the existence of such a conflict, it must be concluded that the actions and determinations of the Attorney General in such a lawsuit are made <u>both</u> a representative of the public interest <u>and</u> as counsel for the state agency or officer." <u>Id.</u>, 11 Cal. 3d at 15.

The court finds that this case does not present "the exceptional case." It is exceedingly common in this district for state prisoners to file civil rights actions against the California Department of Corrections and its employees based on constitutional grounds. These cases do not present the type of "public interest" case which would normally invoke a potential conflict of interest. Therefore, the court finds no merit to plaintiff's claim that the representation of defendants by the Attorney General presents a conflict of interest.

Accordingly, IT IS HEREBY ORDERED that plaintiff's December 13, 2004 motion to prohibit the California Attorney General to represent defendants, is denied.

Also, IT IS HEREBY RECOMMENDED that this action be dismissed for failure to state a claim.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 10, 2005.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:4
rupe2630.f&r

9